MONROE, J.
V. Polizzotto, a commercial firm composed of Vincent, Sam and Frank Polizzotto, obtained judgment against the defendant bank for $571.11, on the ground that the bank had charged their deposit account with that amount without authority; the facts disclosed upon the trial of the case being as follows: About November 24, 1908, a man representing himself to be the agent and solicitor of the Florence Distilling Company (said to have been an Eastern, but as it turned out a fictitious, concern) called at the store of V. Polizzotto, in Plaquemine, and obtained from Sam Polizzotto the firm’s order for an invoice of liquors, which he appeared to be selling at a low price. He then asked Sam Polizzotto to give him some references, and he was given the names of several merchants, of the Iberville Bank & Trust Company, and of the People’s Bank. He then asked which of the banks V. Polizzotto did business with, and having been given that information and having written the names of the references on a piece or sheet of writing paper, with the name “People’s Bank” below the others, and having also been informed that Sam Polizzotto signed the checks of the firm, some of which (canceled) were exhibited to him, he requested Sam Polizzotto to put his signature on the paper, at a place' indicated by him, and which was about the width of, say, four lines below the name “People’s Bank” already written by himself, which request Polizzotto complied with, writing his name, “S. Polizzotto.” On December 6th following, there came to the People’s Bank for payment through the mail, in the usual course of business, from the German Insurance Bank, a reputable bank in Louisville, Ky., a check, bearing the signature “V. Polizzotto, by S. Polizzotto,” the “-S. Polizzotto” being underneath the “V. Polizzotto,” and being the same that had been placed there by Sam Polizzotto, on November 24th. The check was payable to the order of the “Florence Distilling Co.,” and appeared to bear the indorsements of that concern, of the Stitzel Distilling Company, and of the German Insurance Bank. It was wholly in writing and was dated “Plaquemine, La., November 24,1908.” It arrived on Sunday, and was received by an officer of the bank whose attention was attracted by its unusual appearance, and on the following day (Monday, December 7th) he and the cashier and the president consulted about it, and the cashier tried to reach Sam Polizzotto by telephone, but calling up the store and being told that Sam Polizzotto was absent or busy (he was unable to remember which) he, or they, compared the signature on the check in question with the signature of the firm of V. Polizzotto on the signature book and on other cheeks, and concluded that it was good and that no further inquiry was necessary. 1-Ie (the cashier) accordingly (on December 7th) mailed to the German Insurance Bank a draft on New York for $571.11, which draft was presented and paid on December 12th. In the meanwhile — that is to say, on the day that the draft was mailed — Sam Polizzotto called at the bank and made a deposit, and he says he had a conversation with the cashier (which, however, the cashier does not remember), but *773 that nothing was said to him about the check which is now in dispute. On December 12th (the day upon which the draft on New York was paid), the account of Y. Polizzotto with the defendant bank was balanced, and the canceled cheeks returned, and, on the evening, or night, of December 15th, the bookkeeper of the firm (who worked for it only at intervals) noticed the check in question, thought there must be something out of the way about it, and asked Sam Polizzotto for information, and he was told that he (Polizzotto) had never issued any such check. The cashier of the bank was then called up out of bed and interviewed, and next morning he endeavored to stop payment of the draft, which had,, however, been paid. It appears' from the evidence that the firm of V. Polizzotto had been doing business with defendant for a number of years; that the firm account had always been kept in the firm name, but that no member of the firm had ever signed its checks except Sam Polizzotto; that up to, say, the fall of 1907, the firm checks had been drawn on the ordinary printed forms which are in common use, and signed “Y. Polizzotto, per S. P.” (the whole of it being writ-, ten by 'Sam Polizzotto). At the period mentioned (say the fall of 1907), the firm had a form of check printed, with their business card on the upper left-hand corner, and the name “V. Polizzotto” printed in the place for the signature, and with the word “per” followed by a blank line printed underneath it, and Sam Polizzotto called upon defendant’s cashier and showing him the form told him that, on those checks, he would write, after the word “per,” on the line left blank for that purpose, his signature, “S. Polizzotto,” in full, but that the old form of check, when used, would be signed as before; so that there were to be two signatures, to wit, the wholly written “V. Polizzotto, per S. P.” on the old checks, and the partly printed and partly written “V. Polizzotto, per S. Polizzotto,” on the new checks, and the bank had no other signatures on which it was authorized to make any payments for the firm. It seems, however, that on July IS, 1900, S. Polizzotto had opened a small private account with the bank,, which was closed on July 7, 1903, and for the purposes of which he gave the bank his signature, “S. Polizzotto,” and it is now contended that the signature “S. Polizzotto” is good so far as the bank and the firm of V. Polizzotto are concerned, for the purposes of the check in dispute. In fact, the cashier of the defendant seems to hold that the money of the firm of Y. Polizzotto could properly be drawn out on checks signed “S. Polizzotto,” though the name of V. Polizzotto nowhere appeared on them. Thus his cross-examination at one time proceeds as follows:
“Q. Mr. Barker, is it not a fact that Mr. S. Polizzotto has no personal account with your bank, and has not had for some time? A. It is a fact. Q. That being a fact, Mr. Barker, should you receive a check on your bank signed ‘S. Polizzotto,’ would you pay the check? A. In the absence of Mr. Polizzotto, I would pay the check and charge the amount. Q. To whose account would you .charge it? A. Charge it to V. Polizzotto, unless I could see Sam Polizzotto.”
The cashier and another officer of the bank, whose functions appear-to be general, testify, in effect, that the payment of the check in dispute was proper under the circumstances, and Mr. Clay, a banker, called by defendant as an expert, seemed to sustain that view until the circumstances which plaintiff thinks should have excited defendant’s distrust were stated, when he said that he would-not have paid the check without hearing from the drawer. Mr. Desobry, a banker, called as an expert by plaintiff, after hearing a statement of the facts, testified that he would not have paid the check, and it was admitted that Mr. Grace, another banker, would have testified to like effect.
*775 In our view, the signature upon which a depositor is to be bound and the bank is to be authorized to disburse his money may be whatever they agree on (in some cases, where the depositor is unable to write, it being a mere hieroglyphic). But as neither the firm of V. Polizzotto, nor any of its members acting for the firm, ever agreed with the defendant bank that the money of the firm should be disbursed on ■ the signature attached to the check here in dispute, we are unable to see upon what theory they are to be held bound by such disbursement. The only authorized signature which the bank had on its signature book was “V. Polizzotto, per S. P.,” the whole of it in the handwriting of Sam Polizzotto. The other authorized signature, not on the signature book, was “V. Polizzotto” (printed) “per” (printed) “S. Polizzotto” (written by Sam Polizzotto). The signature on which the bank paid the money was “V. Polizzotto” (written by another hand than that of Sam Polizzotto) “by” (also written by another hand) “S. Polizzotto” (written by S. Polizzotto), and that signature was attached to a check such as V. Polizzotto had never issued, and which was so unusual in appearance as at once to attract the attention of the officers of the bank and of the bookkeeper of V. Polizzotto, and which the bank had ample time to inquire about before paying. In view of these conclusions, we consider it unnecessary to inquire into the liability of persons who have affixed their signatures to incomplete instruments, or in to the question whether the paper upon which Sam Polizzotto wrote his signature could be regarded as an incomplete check, those questions, in our opinion, not being in this case.
It is therefore ordered, adjudged, and decreed that the application herein made be now dismissed at the cost of the applicant, and that the judgment of the Court of Appeal, here made the subject of review, remain undisturbed.